Cintas versus Abel May it please the Court, this is Michael Rubin for the Valise Plaintiffs, again. Are you the appellant in this case? Yes, this is the MDL case where Judge Armstrong remanded the 70 petitions to compel arbitration or issued a suggestion of remand order back to the joint panel of multidistrict litigation to remand to the 70 district courts, where we contend that she should not have issued that suggestion of remand order for two reasons. One, neither she nor any of the district courts had subject matter jurisdiction. And two, there was no standing for Cintas to sue in the first instance because it was not aggrieved by anyone's refusal to arbitrate. Now, how would a finding, how would finding subject matter jurisdiction over a freestanding motion to compel not violate the well-pleaded complaint rule? It certainly would violate the well-pleaded complaint rule, and that is why the 11th Circuit just granted en banc review, and right now we only have one circuit, the 4th I think, though, that because these issues are so well argued in the briefs and because so many circuits have weighed in, I would like to focus on the second argument, which I think the court, the second issue which I think the court should also reach, the refusal to arbitrate, because... How do we reach it if there's no jurisdiction? Because steel company, because under the, both are jurisdictional. If they lack standing, then there is no jurisdiction, and therefore, you can decide on either ground or both. We contend that it is a jurisdictional lack of standing because the very petitions to compel arbitration that Cintas filed acknowledged that the, I'll call them the plaintiffs, the Lillies plaintiffs for ease of reference, were seeking to arbitrate in the San Francisco arbitration. As long as my clients were seeking to arbitrate in the San Francisco arbitration, which Arbitrator Myerson said they were permitted to do, and they were certainly trying to do, and we were arguing in the previous 40 minutes why they should be permitted to do, then they were not refusing to arbitrate. And if they were not refusing to arbitrate, then Cintas lacked standing to pursue any of those petitions in the 70 courts against the 1,900 individuals, and there is a jurisdictional lack of standing, and the court can decide the appeal on that basis. I'm not saying you shouldn't reach the subject matter question jurisdiction issue. But if you reach that issue and rule in our favor, or however you rule, the question will still arise. Here's the problem. And let me get practical just a moment here. What's going on in this case? Cintas wants people, despite what they just said, to file individually, not to pursue claims in a single arbitration. We're trying to get people to be able to pursue claims in a single arbitration. We're pursuing clause construction before the arbitrator. February 9th, we filed a clause construction motion. In March and April afterwards, Cintas filed 70 petitions to compel, or actually 1,900 petitions to compel arbitration. They had already filed 1,900 petitions? No, there were 1,900 respondents. There were 70 petitions against 1,900 respondents, whom they handed and served, current employees and former employees, despite our saying serve us as their counsel. Cintas refused to acknowledge us as their counsel. They personally went out and served everyone in the workplace or at home, in order to take advantage, well, perhaps to intimidate, but ostensibly to take advantage of the rule that a court that compels arbitration must compel that arbitration to occur in the workplace. And Cintas thought they could end around the arbitrator's clause construction ruling by forcing, by filing 70 different petitions to compel and forcing people to arbitrate in the various jurisdictions. Is that because there are 70 different jurisdictions? Yes, there are 70 different district courts. Yes. There are 70 separate MDL petitions and 70 separate district courts that were consolidated and sent to Judge Armstrong. I assume they didn't say in the petitions whether the person served had to arbitrate individually or with others who lived in that district. They did not take a position in the petitions. They simply said that each of these individuals is required to arbitrate individually. Cintas, first of all, filed all of those petitions in the wrong jurisdiction. I'm sorry, in the federal courts rather than the state courts. State and federal courts have concurrent jurisdiction. Under FAA Section 4, the subject matter question jurisdiction point we make is not that they were precluded from filing those petitions by them at all under FAA Section 4, but that absent federal question jurisdiction under the well-pleaded complaint rule, they should have filed in state court. But had they filed in state court, then you reached, and this is why it's important that this court reached the second issue, the refusal to arbitrate, because we don't want Cintas now to go back and refile 70 petitions. They may be time-barred for various reasons. Do you grant that had there been no arbitration agreement in this case at all, and Cintas wanted to have a declaratory relief action that these employees were not entitled to overtime, they could have brought an action in the federal district court on federal question jurisdiction? After we filed our overtime case? As an initial matter. Yes, as an initial matter, they could have, I suppose they could have filed the declaratory relief claim. There was federal question jurisdiction for a declaratory relief action, right? That's right. Now, as I read Section 4 of the FAA, it says there is jurisdiction where there, but for the agreement, there would be jurisdiction under civil action or admiralty. That's right. And if that's so, I'm having trouble seeing why the Fourth Circuit isn't correct, and the First and the Eleventh Circuit, so I'm probably not getting something. I think what you're not getting, and this is not an easy issue, but I think what you're not getting is that, save for the agreement in 1925, when the Federal Arbitration Act was enacted, was to address the ouster doctrine. It used to be, and you've read about all the judicial hostility to arbitration, which was the impetus for the FAA, but it was also the impetus for the FAA to rule into this country in the early years, that if the parties had an arbitration agreement, then courts couldn't confirm that agreement. The arbitration agreement would oust the court of any jurisdiction, and in response, courts would not even determine whether it was an enforceable arbitration agreement. That ouster doctrine is what the majority of the circuits to construe this agreement says, explains, save this agreement means. If not for the ouster doctrine, we would be able to confirm, vacate, compel in these instances. So historically, that was the concern expressed by Congress to ensure that the ouster doctrine would not preclude the courts from hearing these cases at all. Prudential base, the Fifth Circuit, a court which is otherwise vested of jurisdiction of the suit would not be vested of jurisdiction of the case. That was the concern that the courts were expressing. But getting back to the refusal to arbitrate and why it matters. I'm not sure that I answered completely the question you had asked, Judge Reinhart, about if there was nothing, if the petition did not on its face state that the plaintiffs were seeking to compel in San Francisco. That makes it a fairly clear-cut pleading matter. And a jurisdictional matter, and this court would have jurisdiction, or I'm sorry, this court would act properly in concluding that there was no jurisdiction over this case because Sintas lacked standing. But even if that hadn't been pleaded on the face of the petitions, standing as a jurisdictional matter can be determined by the court at any stage of the proceedings. So as soon as we responded by pointing out that all of these plaintiffs were seeking to arbitrate before arbitrator Meyerson and established that, and the facts do establish that without dispute, then we would show that Sintas lacked jurisdiction, lacked standing because there was no present refusal to arbitrate. The reason that is important is if Sintas, despite the passage of time, were to try to refile its petitions in state court, we would have to adjudicate this very same refusal to arbitrate issue in every single state court in every different county around the country that Sintas filed those petitions in. If Sintas tried to do that, the arbitration agreements say that the purpose of having an arbitration agreement is to effectuate a fair, efficient, speedy resolution of these cases. We're obviously not there. We don't want it to be an even longer, more convoluted set of proceedings than it already is. And that it's clear that the determination of the scope of the arbitration agreement and the meaning of the arbitration agreement is a determination that the arbitrator makes, not that is now going to be spread out in courts, state or federal, throughout the country. What do your clients say in response to the petition in this case? Do they say we are willing to proceed to arbitration in San Francisco? We have not answered. We instead moved to dismiss for lack of jurisdiction. But, yes, that is our position. But you said in order to dismiss for lack of jurisdiction on this basis, you only have to look at your response. But you say you haven't responded? Our response was in our motion to dismiss stating that we are willing to arbitrate in San Francisco. We, in fact, have moved to arbitrate in San Francisco. We moved to arbitrate in San Francisco before CENTUS filed its petitions. We have consistently sought to arbitrate in San Francisco. So if there's a difference of opinion in which they say you've refused to arbitrate because you've refused to engage in single arbitrations. Right. And you say we don't have to engage in single arbitrations. How does the court decide the question of whether you've refused to arbitrate? If the basis for the party's agreement is a disagreement about the meaning and application of contract language, which in this case it is, then the answer is, are the plaintiffs willing to submit that threshold question to arbitration, which we are and have done? We are not, as a legal matter, as long as we are willing to let the arbitrator determine whether we can proceed on a class or individual basis, we are not refusing to arbitrate. We're welcome in arbitration. Well, but don't we really then have to say that we agree with the arbitrator's decision? Because there's a dispute about it. I wish you would, but you don't have to, because let's say the arbitrator ruled against us. We still weren't refusing to arbitrate. We sought to arbitrate, we lost, that's our tough luck. You know, Sintas didn't have to file these petitions at all. There had been a stay order that 102 people were compelled to arbitrate, 1,900 others had their litigation stayed. My clients could not pursue their claims in litigation. There was no reason for Sintas to file the 70 petitions against 1,900 people. We agreed to submit it to the arbitrator, but this was an entirely voluntary unilateral action on Sintas' part to press the point. Because we were willing to submit it to the arbitrator and had in fact submitted it to the arbitrator, we were not refusing to arbitrate within the meaning of the language. And you do not need to decide whether we were right in this appeal. You don't need to decide whether we were right or we were wrong. Suppose you said, you know, we're willing to arbitrate in Italy. You would have to look and you would have to see whether there was any plausible construction that an arbitrator could reach as to whether we could arbitrate in Italy. If that was an issue that the arbitrator could decide legitimately one way or another and we said we were willing to arbitrate in Italy, then we were not refusing to arbitrate in Italy. If the arbitration agreement specifically said that the arbitration may not be conducted in Italy and there were no legal theories as to why that was an unenforceable or unconscionable or otherwise improper clause, then we would be refusing to arbitrate, because we were refusing to arbitrate. Even if your willingness does not comply with the contract, it's not going to be an arbitration. As long as it's a plausible theory that an arbitrator might accept, that's enough? If we are willing to submit that plausible issue to the arbitrator, yes, because rather than refusing, we are offering to go before the arbitrator to tell us whether we can do it this way. If we can do it this way, great. If we can't do it this way, the other side doesn't lose anything. The arbitrator has said that its construction prevails and either we have to do it their way or we don't pursue our, in this case, overtime rights. But we've done everything we can. And from a practical perspective, there's nothing else that we could have done to present our theory of how the contract language should be constructed. How the governing legal principles should be applied that we didn't do. We presented it to the arbitrator. He actually ruled in our favor on most issues. There was a dispute. We sought to have it clarified. We pointed out the reconsideration clause. This case has gone on for a long time because there have been rulings by the district court. Do you want to save your last three minutes for rebuttal? Yes, thank you. But I did have one question and I hope it won't take too much time. We won't take it out of your three minutes. Isn't interlocutory appeal reserved for pure questions of law and not record-based inquiries such as whether or not SSR refused to arbitrate? It's a two-part answer. The first part is when you're deciding, I'm sorry, when a district court in the first instance and then the court of appeal in the second instance is deciding whether an issue should be certified under 1292B, yes. One of the factors that the courts consider is whether there's a pure question of law rather than a complicated fact-based question. But once a case is certified under Yamaha v. Calhoun, every issue involved in that case is up before the court of appeal because you don't certify issues, you certify orders, and the law is well settled on that. So you have jurisdiction over having granted the 1292B certification as Judge Armstrong did. You have the power to decide both issues. The second part of the answer is, does this refusal to arbitrate question raise a complicated factual issue or a pure question of law? And, indeed, it raises a pure question of law because Sintas's petitions allege that we were seeking to arbitrate in the San Francisco arbitration, which all the facts you've seen before you confirm, and the joint panel on multidistrict litigation. In the second question, it certified to Judge Armstrong asked whether there was a refusal to arbitrate given that the plaintiffs were seeking to arbitrate in San Francisco. So there is no factual dispute on that issue. Thank you. Good afternoon, Your Honors. Mark Dosker on behalf of Sintas. Let's start with subject matter jurisdiction. It's very clearly briefed and well briefed by both sides. The circuit tally doesn't matter because what matters is the better reasoned approach. But the circuit tally is actually even. The Fourth Circuit in Vaden and the Eleventh Circuit in Tamiyami take the view that we take. The Second Circuit in Westmoreland and the Sixth Circuit take the view that my opposing colleague takes. And Tamiyami, didn't that go in bank? No, that's the community state bank case. Same circuit, Eleventh Circuit, different case. Tamiyami is a 1999 case we cite in our papers. And also there's Household Bank versus JDS. But the one that went in bank is later, and the argument was that Tamiyami was wrongly decided. It's not related factually, but it is arguing that Tamiyami is wrongly decided. If you look at that case, though, community state bank case, it's a little like if you know the currently popular children's books, Where's Waldo? You're going to try to find the hidden little icon in the book. It's a bit like Where's Waldo, trying to find the federal question there. Here, very clear federal question. Each of these 1900 people sued my client in federal court on a federal question claim. I would urge the court to study the briefs, study the record on the subject matter jurisdiction question. That's the main reason we're here on this appeal. The two sides are here. It is a pure legal issue, 1292B. Study it at length, and I think you'll find that Vaden is by far, in a way, the more persuasive opinion than the proxy. Do you have any idea what the status of the Fourth Circuit case is? You mean the Eleventh Circuit case? The status is this. My understanding from looking at the docket sheet on Pacer is that the opening briefs have been done. And indeed, if you look at the docket sheet, you'll see we did an amicus brief in that case. And the court has accepted it, granted our motion for that. The opening briefs have been done. The second briefs will come sometime over the holidays. And I think they've got hearings scheduled on February 28th of next year on the en banc. But, Your Honors, it doesn't matter the tally of circuits, though we think that clearly the circuits are even. Some circuits are internally conflicted within themselves, the Seventh, we think, and the Fifth. But what matters is the persuasion. I would urge Your Honors to look at the language of the statute. You must always start with that. A party aggrieved by, I'm reading now from Section 4 of the FAA, quote, a party aggrieved by the alleged failure, so it's not a standing issue, we just have to allege it, the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have, not does have, would have jurisdiction under Title 28, not some part of Title 28, like diversity, all of Title 28, any of Title 28, like federal question, in a civil action or an admiralty of the subject matter of a suit arising out of the controversy between the parties. And it's very clear that controversy between the parties means the substantive disagreement here about wage-hour payments, not the disagreement about whether to arbitrate. Arising out of the controversy between the parties for an order directing that such arbitration proceed in the manner provided for in such agreement, close quote, not some other manner, not in Italy, Volt, U.S. Supreme Court from the late 1980s, confirms that the primary purpose of this section is to enforce arbitration agreements according to their terms. It's not enough by far that counsel wish to arbitrate in the way they want to. They don't get to rewrite the agreements. The agreements are jurisdictional. They have to arbitrate in the way that the enforceable arbitration agreements say. This is not about agreeing to the AAA rules and then the AAA decides the place of arbitration. The place of arbitration is the county where each person last worked. And the award very clearly says that unlike the Sidhu case, in this case, the agreements say that it's between an individual, the claims of an individual and Cintas. But let's just assume, for instance, take an example of all the people who are in California. And your contract said you have to, you can't have a class action. It doesn't say that. I know it doesn't. Okay. So in this hypo, there's an express ban. Is that your hypo? Yes, basically. But your contract said you have to arbitrate individually. You can't have class action. And they said, well, we'll arbitrate, but we'll only arbitrate, we'll arbitrate with a class action, and we'll submit that question to the arbitrator. Well, initially, questions of unconscionability are decided in the first instance by the courts. This court, Ninth Circuit, has confirmed in Davis v. O'Melveny and Amire, quoting the en banc of the Ninth Circuit in Nagrampa v. Mayoku, that questions of unconscionability are for the arbitrator, excuse me, for the judge, for the court, to decide. Judge Armstrong decided previously that these agreements, the ones at issue, are not unconscionable. They are fully enforceable. And my learned colleague is looking for a giant do-over. Those orders were not appealable, and they were not appealed. We are past that stage, and he keeps slipping the word unconscionability into his argument. It is not, respectfully, not before this court. Look at the Supreme Court's discussion in Moses H. Cohn, and I quote, Section 4 provides for an order compelling arbitration only when the federal district court would have had jurisdiction over a suit on the underlying dispute. Hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue. That's footnote 32 of Moses H. Cohn, which, how interesting that my opposing colleague here, at page 3 of their brief, depict that as a holding, but then by the time they get to page 30 of their brief, they flip 180 degrees and claim that it's, and I quote, ill-considered and ambiguous dicta. That's because they know that's the seed of the destruction of their position and argument. Now, the Supreme Court in Moses H. Cohn specifically approved of a case called Commercial Metals v. Balfour, and cases cited therein, and one of those cases so approved was the Second Circuit's 1959 case of Robert Lawrenson Company v. Devonshire Fabrics, in which they said very clearly the quote that applies to today. Quote, the jurisdiction under Section 4 may doubtless in some instances be federal question jurisdiction, based upon rights alleged to arise out of some federal statute other than the Arbitration Act. Close quote. That is the situation here. Westmoreland in the Second Circuit and the cases which lemming-like follow it do not engage in good analysis, and they fail to recognize that Title 28 means all of Title 28. They fail to recognize that the well-pleaded complaint rule is a creature of the courts, and the statute trumps it, as it did in Judge Bea's question about declaratory relief. Now, to the subject matter jurisdiction argument, it is well laid out in the briefs. I urge the Court to study it closely. Transitioning to the question of failing, neglecting, or refusing, because that's the language under Section 4, to arbitrate within the terms of the agreement. Counsel portrayed that as a standing issue. It's not. It's just a question of what must be alleged. That's the word in the statute, alleged. We did so. It's no more a standing issue than to say that if someone alleges negligence in a negligent case, and it turns out upon proof there was no negligence, there was a lack of standing. No, that's not a standing question. It's just a merits question. Well, let me just ask a question here. Wouldn't it make sense for a court to consider the underlying dispute and determine whether it had jurisdiction over a motion to compel? Particularly given the text of FAA 4, it provides a district court may assert jurisdiction over a petition to compel arbitration where, quote, say for such arbitration agreement the court would have jurisdiction under Title 28 in a civil action or an admittal of the subject matter of a suit arising out of the controversy between the parties. Now, the two circuits have held that the courts can look through the motion to compel, motion to compel to the underlying claims. What would be your response to that? If I heard Your Honor's question correctly, it sounds like you're commenting on the Vaden approach, looking through to the substantive controversy between the parties.  That's our brief. If you look at the petitions, there's some of them in the record as samples. They're all the same except for the court caption and the signature block with my local counsel. And by the way, you'll also see in the record that my opposing counsel acknowledged before Judge Armstrong that if we wanted to enforce this arbitration agreement, we had to go around the country, nationwide, to the 70 districts and do what we did. Now, looking at page ER530 is an example of one of the petitions. That particular one is in Georgia. We allege at paragraph 2, this court, being in this instance now the transfer or district court, one of the 70, this court has subject matter jurisdiction over this proceeding under Section 4 of the Federal Arbitration Act, 9 U.S.C. Section 4, and under 28 U.S.C. Section 1331. In that, each of the respondents has asserted claims against Cintas under the Fair Labor Standards Act, 29 U.S.C. Sections 201 et sec, FLSA, which claims each respondent has refused and continues to refuse to arbitrate in accordance with the terms of his or her written agreement with Cintas. So I think Your Honor is quoting or alluding to Vaden. I think it's exactly the right approach and the only approach that is consistent with the plain language of the statute as written, with the legislative history, with the scholarship. Counsel talked about the ouster doctrine a lot. The ouster doctrine was taken care of head on by Section 2 of the Federal Arbitration Act. That took care of the ouster doctrine. There's nothing about this, and both the Law Review article, the recent very good article by Professor Sly that is cited, and also McNeil, leading treatise on arbitration, confirms that this is just, the ouster argument is just not historically correct. On the question of failing, refusing, and neglecting, you know, I want to emphasize that there were multiple bases for arbitration. All correct for Judge Armstrong's finding that they failed, refused, and neglected. We quoted those at pages 10 and 11 of our brief, and I'll briefly remind the Court of them. Because my opponents ignored and therefore waived on appeal in their opening brief all but one. So you have all these alternative grounds that you, with respect under your precedent, you must affirm. Because the district court ruled them, and my opponents have not challenged them. Page 10 and 11 of our brief, and I'll read the citations to it. The district court found several sufficiently, excuse me, several independently sufficient refusals by the respondents to arbitrate, within the meaning of Section 4, including one. Quote, respondents' decision to affirmatively opt in to the Valise litigation as plaintiffs, rather than pursuing arbitration. Constitutes a refusal to arbitrate, close quote. Two, quote, respondents only attempted to join the ongoing arbitration in this district after this court rejected their argument, advanced in their capacity as Valise plaintiffs, that the arbitration clauses should not be enforced. They fought, and they lost. That's not agreeing to arbitrate. Third, quote, respondents have voiced their resistance to arbitration at various stages of the Valise litigation, close quote. And four, quote, respondents have refused to arbitrate within the meaning of Section 4 by pursuing arbitration in the Northern District of California, rather than the fora specified in their arbitration agreements. She issued her order three times, January 10th, 12th, and April 11th. She said it each time, ER-7, ER-96, ER-118. As discussed at pages 49 of our brief, and again at page 55 of our brief, the other side failed to address these in their opening brief. And under the cases cited from the Ninth Circuit, including McKay versus Feil, the other side failed to address these in their opening brief. Where plaintiff did not challenge an alternative holding supporting the decision, plaintiff has abandoned his right to appeal. So the court has to, I respectfully submit, affirm. I can't let one thing that counsel said that he tossed in his argument go uncorrected, because it's really, really quite inappropriate. His comments about service of process, the court, if it wishes, can read in the supplemental excerpts of records starting at SER-91 and going on for some length of time. I'm not going to go into details about what really happened here, but as the footnote in our brief indicates, with cites to the record, what counsel is doing here is pursuing this stratagem on behalf of another absent party he represents, a union, which is trying to bring litigation-based pressure to obtain a result that has nothing to do with this litigation. It's in a footnote in our brief. And I'm convinced that's because they didn't. And we started getting, as the record shows, unsolicited voicemails, letters, et cetera, in our office from people saying things like, I'm quoting now from SER-92, to my surprise, I found myself in this lawsuit. I never knowingly signed on to any lawsuit against Sintas. I have no claim against them, and I want nothing from them. Likewise, another one, SER-92, referring to a voicemail from one such person and referring to the plaintiff's law firm, I sent them, the law firm, a letter saying that I did not want to be a part of it, and they continued to send me stuff. I called those attorneys and told them I did not want to be a part of it, but I guess they did not take my name off the list or anything like that. I was faced, and my colleagues were faced, with multiple such incoming communications, which, of course, ethically, we didn't talk to people, we didn't have any discussion, we weren't sure what the status was. But this business about running around the country and serving process and trying to disparage my client or me is just inappropriate. The real context is as we have laid it out in great detail. The Supreme Court, in other cases, has confirmed that arbitration agreements must be enforced according to their terms, and I quote now, quote, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums. Close quote. That's Dean Witter Reynolds versus Beard, Bird rather, Bird, and also Moses H. Cone itself says, and I quote, piecemeal resolution, close quote, of the party's disputes required, quote, when necessary to give effect to an arbitration agreement. So, in any event, CENTAS also has the statutory right under FAA Section 4 to have these, aside from the place of arbitration term, we have the statutory right to have the arbitrations proceed in the district where they were filed. And those were the 70 districts. We had no other choice faced with the tactics we were facing but that to exercise our rights to have these agreements enforced as written and not as being attempted to be resculpted and changed for the purposes that the record shows. If there's any questions, I'd be pleased to address them. Thank you, counsel. Thank you, Your Honor. It's getting late. Three brief points, if I may. First, there was no waiver. We raised the issues in the opening brief at page 47. The main argument that CENTAS is making as to waiver was that the plaintiffs had waived their right to seek arbitration by opting in to the federal overtime lawsuit, but as we point out, the notice that Judge Armstrong sent to each of the plaintiffs and to 10,000 others was not a waiver. The plaintiffs did precisely what Judge Armstrong told them to do. Secondly, the unconscionability issue has not been resolved.    Judge Armstrong was very clear in her May 4, 2005, ruling, and I refer to the supplemental excerpts at page 218 to 230, that she could not decide whether our challenge to a prohibition against class actions was unconscionable, because CENTAS was refusing to take a position as to whether there was a prohibition against class actions. Page 227, note 7. She said that since CENTAS is not stating that all class actions are prohibited, then this is an issue for the arbitrator to decide, and so first the parties must go to arbitration for construction of the contract under the first stage of the clause construction procedures of the AAA. Only then, if it's ever determined that class actions are prohibited, would we have a ripe unconscionability challenge. And then finally, and this gets back to the point I think that Judge Nelson was asking before, as to the appropriateness of reviewing this issue, given the question of whether there was a refusal to arbitrate or not, I refer you to Judge Armstrong's language. And her ruling that was the suggestion of remand to the MDL, all three rulings, the supplemental excerpts at page 119. This was why she remanded, this was her analysis of whether plaintiffs were refusing to arbitrate. Quote, if the written agreement contains a place of arbitration clause, then logically a party's attempt to arbitrate elsewhere is a refusal to arbitrate. Under the agreement, our position is that wasn't her call. That was for the arbitrator to decide. We had submitted that precise question to the arbitrator. We weren't refusing to arbitrate. We were asking the arbitrator to tell us what were our rights. Thank you. Thank you, counsel. Thank you all. Case just argued will be submitted. The court will stand in recess for the day. Thank you.
judges: Nelson, Reinhardt, Bea